UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PHYLLIS MARROW, Administratrix : <br> of the Estate of Jamar Marrow, : <br>     Plaintiff, : <br> : <br>     v. : <br> : <br> JASON AMATO and : <br> JAMES BORRICO, : <br>     Defendants. : | Civil No. 3:07cv401 (PCD) |

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Phyllis Marrow brings this case as the administrator of the estate of her son, decedent Jamar Marrow, claiming that Defendants Jason Amato and James Borrico, both police officers in Bridgeport, used excessive force in violation of the Fourth Amendment to the United States Constitution and the common law of the State of Connecticut in the shooting death of Jamar Marrow on May 3, 2006 in Bridgeport, Connecticut. Defendants, who were acting in the course of their duties as police officers, are sued in their individual capacity only. Defendants have moved for summary judgment on the basis that Defendants' actions were reasonable in light of all the circumstances and therefore did not constitute excessive force, and also argue that Defendants are entitled to qualified immunity. For the reasons stated herein, Defendants' Motion for Summary Judgment [Doc. No. 23] is **granted.**

**I.    BACKGROUND**

Except as otherwise noted, the following undisputed material facts are set forth in Defendants' Local Rule 56(a)(1) Statement [Doc. No. 25] and admitted by Plaintiff in Part A of her Local Rule 56(a)(2) Statement [Doc. No. 26-3], or are set forth by Plaintiff in Part B of her Local Rule 56(a)(2) Statement [Doc. No. 26-3] and admitted by Defendants in their Response to

Plaintiff's Rule 56(a)(2) Statement [Doc. No. 30]. Because the case is at the summary judgment stage, the Court views the record in the light most favorable to Plaintiff as the non-moving party. See Terry v. Ashcroft, 336 F.3d 128, 139 (2d Cir. 2003).

On May 3, 2006, Defendants Jason Amato and James Borrico, both of whom had been employed as police officers in Bridgeport for five and a half years, were on duty in a marked police patrol car in which Amato was the driver and Borrico was the passenger. They heard a police radio transmission regarding an assault wherein a black male wearing a black coat had attempted to rob another man using a rifle or a BB gun, and had fled the scene heading westbound in a dark colored Ford Explorer. Defendants considered the matter urgent. Defendants saw a vehicle matching this description coming from the direction where the assault had occurred and they began to follow it, but they did not stop the vehicle until it began swerving over the yellow line into oncoming traffic. Defendants activated their lights and siren. The Explorer pulled over, but before Defendants could get out of the police car, the Explorer took off at a high rate of speed. Defendants observed that the driver was a black male wearing a black coat. Defendants pursued the Explorer through the streets of Bridgeport at speeds of approximately 55 miles per hour, during which time the Explorer ran through several red lights and stop signs. The Explorer continued to swerve and Defendant Amato observed the driver leaning or reaching over to the passenger seat, which caused Amato to believe, based on prior experience and on the police radio transmission he had heard, that the driver was reaching for a weapon. Therefore, the officers put out a call on the radio stating that they believed the driver they were pursuing had a weapon.

As the Explorer attempted to make a left hand turn, it struck a car parked on the corner of

the intersection, and the impact caused the Explorer to stop. The police car pulled up to the Explorer, stopping on an angle such that the front of the police car was between two and three feet from the driver's door, forming a V between the two vehicles. Defendant Amato positioned the police car in this manner so that "if it was a rifle that he had in the vehicle, that he couldn't get out and begin firing at the two of us because of the way we pulled up." (Amato Dep. at 68.) Officer Borrico, who was seated on the passenger side, which was the side closer to the Explorer, got out of the police car and closed the door. Immediately, Borrico heard the Explorer's engine rev. He states that "[B]efore I could react and do anything, the car backed up. I was struck by the vehicle. I was actually pinned in between the two. It ripped my shirt, twisted my belt. I fell to the ground, and the vehicle proceeded past me." (Borrico Dep. at 24.)

     Officer Amato, who was exiting the police car on the driver's side, saw and heard the Explorer backing up. Amato saw Borrico's hands rise into the air, and it appeared to him that Borrico was about to be crushed between the two cars. Amato then lost sight of Officer Borrico as the Explorer reversed, could not hear Borrico saying anything, and believed that Borrico was on the ground underneath the Explorer and was going to be crushed. From his position at the rear of the police car, Amato could see that the two vehicles were within inches of each other, and he could not see Borrico. As the Explorer was reversing, and before it passed the rear passenger side of the police car, Amato yelled for the driver to stop, but he did not. Amato shot at the driver, intending the stop the Explorer from backing over his partner Borrico, whom he believed was under the Explorer. Amato fired only until the Explorer passed him.

     Borrico, who had in fact been pinned between the cars rather than under the Explorer, heard Amato's gunshots and mistakenly believed that they were coming from the Explorer.

Borrico rose to his feet and fired his weapon at the driver of the Explorer. Borrico explains that a number of factors made him believe that the driver was shooting at him and Amato, specifically that the driver was a suspect in a robbery and assault with a rifle or BB gun, that he had refused to stop and had engaged the police in a high speed pursuit, that he was involved in a motor vehicle accident and had then struck Officer Borrico with his vehicle as he again attempted to flee. The gunshots sounded to Borrico as if they were coming from the direction of the Explorer, and he did not see anyone else in the area. However, Borrico did not see muzzle flashes coming from the Explorer, nor could he see the driver as he fired.

The Explorer stopped nearby after crashing into a stationary object. The driver of the Explorer, who was subsequently identified as Jamar Marrow, had been fatally shot and died on the scene. Following the incident, a Winchester .22 rifle was recovered from beneath the right front passenger door of the Explorer, apparently thrown out the window by Marrow. An investigation revealed that no one other than Officers Amato and Borrico had fired weapons, and that the shot that had killed Jamar Marrow had been fired by Amato.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56©. No genuine issue of material fact exists and summary judgment is therefore appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). A material fact is one which "might affect

the outcome of the suit under the governing law," and an issue is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  However, "[c]onclusory allegations will not suffice to create a genuine issue." Delaware & H.R. Co. v. Conrail, 902 F.2d 174, 178 (2d Cir. 1990).

The initial burden falls on the moving party, who is required to "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d, 265 (1986).  "A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial.  It need only point to an absence of proof on the plaintiff's part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.'" Parker v. Sony Pictures Entm't, Inc., 260 F.3d 100, 111 (2d Cir. 2001) (quoting Celotex, 477 U.S. at 324, 106 S. Ct. 2548); see also Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d Cir. 1994) ("The moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case.").  If the moving party meets its burden, the burden shifts to the party opposing summary judgment to set forth "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  In determining whether the parties have met their respective burdens, the Court draws "all factual inferences in favor of the party against whom summary judgment is sought, viewing the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the party opposing the motion." Rodriguez v. City of N.Y., 72 F.3d 1051, 1060 (2d Cir. 1995) (citations omitted).  However, the non-moving party "may not rely simply on conclusory allegations or speculation to avoid

summary judgment, but instead must offer evidence to show that 'its version of the events is not wholly fanciful.'" Morris v. Lindau, 196 F.3d 102, 109 (2d Cir. 1999) (quoting D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998)); see also FED. R. CIV. P. 56(e).

Determinations of the proper weight to accord evidence and assessments of the credibility of witnesses are within the sole province of the jury and are therefore improper on a motion for summary judgment. Hayes v. N.Y. City Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996). "If reasonable minds could differ as to the import of the evidence . . . and if . . . there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997) (internal citations omitted); see also Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000) ("When reasonable persons applying the proper legal standards could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury.").

### III. DISCUSSION

### A. Excessive Force

Plaintiff claims that Defendants violated Jamar Marrow's Fourth Amendment rights by employing unreasonable force against him. The Fourth Amendment prohibits the use of excessive force during the seizure of a free citizen. See Graham v. Connor, 490 U.S. 386, 394, 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989). Accordingly, even when an officer has probable cause to seize an individual, the officer must employ a reasonable amount of force when effecting the seizure. See id. at 395. "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to

effect it," and therefore, the Court must carefully balance "'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake" in order to determine "whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment." Id. at 396 (citing Terry v. Ohio, 392 U.S. 1, 22-27, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); quoting Tennessee v. Garner, 471 U.S. 1, 8, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985)); see also Bell v. Wolfish, 441 U.S. 520, 559, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979) ("The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application."). Courts look at the "totality of the circumstances," Garner, 471 U.S. at 8-9, to determine whether the force used during a seizure is reasonable, considering "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. In performing this analysis, the reasonableness of the force used should be considered not from the perspective of what seems necessary "in the peace of a judge's chambers," Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.), cert. denied, 414 U.S. 1033, 94 S. Ct. 462, 38 L. Ed. 2d 324 (1973)), but rather "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396. This inquiry is an objective one and should not take into account officers' underlying motives or subjective intent. See id. at 397.

Summary judgment is inappropriate with regard to an excessive force claim when material facts are in dispute. See Breen v. Garrison, 169 F.3d 152, 153 (2d Cir. 1999) (reversing grant of qualified immunity on excessive force claim where facts were disputed); Robison v. Via,

821 F.2d 913, 923-24 (2d Cir. 1987) (summary judgment inappropriate where parties disputed material facts regarding plaintiff's allegations); Universal Calvary Church v. City of New York, No. 96 Civ. 4606 (RPP), 2000 U.S. Dist. LEXIS 15153, at *15-16 (S.D.N.Y. Oct. 17, 2000) (denying summary judgment where the parties disputed plaintiff's allegations that defendant officers assaulted him); Kerman v. City of New York, No. 96 Civ. 7865 (LMM), 1999 U.S. Dist. LEXIS 10870, at *25 (S.D.N.Y. July 19, 1999) (denying summary judgment where there were material issues of fact as to whether and to what extent the plaintiff continued to resist even after he realized that defendants were police officers); Kerman v. City of New York, 261 F.3d 229, 239-40 (2d Cir. 2001) (jury should decide whether force used was excessive and whether defendant was entitled to qualified immunity where there were disputed factual issues as to defendant's conduct following the initial seizure and handcuffing).

     Here, however, the material facts are undisputed, and the only question is whether the facts so described make it objectively reasonable for Defendants to have fired shots at Mr. Marrow. Plaintiff's observation that Jamar Marrow "cannot from the grave contest" (Opp. at 5) the officers' version of the events is not without merit. Nonetheless, Plaintiff has failed to point to any evidence that would call into question the veracity of Defendants' version of the story or appear to create a credibility issue for jury determination. Plaintiff presents no alternative narrative of the events of May 3, 2006, points to no inconsistencies between Amato's and Borrico's stories, and cites no physical evidence or other results of the police investigation that would call into question Defendants' version of the incident. The only other witness, Felix Echevarria, another Bridgeport police officer who had arrived on the scene while the events were unfolding, confirms Defendants' description of the incident. In a written statement, Mr.

Echevarria said, "I then observed the two officers exit their vehicle, at which time the motorist put the vehicle in reverse and proceeded toward the two officers. I then lost sight of one of the officers, thinking that the vehicle hit the officer. I proceeded forward to block the vehicle from fleeing. At which point I heard shots." (Def.'s Ex. II)

Plaintiff's primary argument why Defendants' use of force was excessive is that the Defendants "shot first and asked questions later" (Opp. at 1) and "permitted faulty assumptions to justify the shooting of a civilian." (Opp. at 8) Specifically, Plaintiff states that "Amato never attempted to look beneath Mr. Marrow's [Explorer] as it passed to confirm his conclusion that Borrico was trapped beneath the car, and nothing prevented him from doing so." (Pl.'s Rule 56(a)(2) Statement, ¶ 24, citing Amato Dep. at 104-108) Defendants respond that Amato testified that he did look under the Explorer "as it passed me" (Amato Dep. at 104), but that Amato did not look to see whether Borrico was indeed beneath the Explorer before firing at Marrow because in the time that it would have taken him to have knelt or "scrunched down to take a peek" under the Explorer, it would have already finished backing over Borrico, had he been under the vehicle as Amato believed. (Amato Dep. at 105) Amato also contends that, had he moved from his location at the rear of the police car in order to attempt to look for Borrico or to look under the Explorer, he risked being struck by the Explorer, as Borrico had been, which was accelerating in reverse. (Amato Dep. at 106-108) Amato also maintains that had he knelt down behind the police car to attempt to look under the Explorer, "I would have lost sight of the vehicle now coming at me. If the vehicle then made any kind of movement, pushing my vehicle, it would have struck me." (Amato Dep. at 117-118)

Amato's belief that Borrico was under the Explorer was reasonable, although incorrect, based on what he had witnessed. Specifically, Amato had seen Officer Borrico exit the police car on the passenger side, next to the Explorer. Amato, who was exiting the police car on the driver's side, saw and heard the Explorer backing up. Amato saw Borrico's hands rise into the air, and it appeared to him that Borrico was about to be crushed between the two cars. Amato then lost sight of Officer Borrico as the Explorer reversed, could not hear Borrico saying anything, and believed that Borrico was on the ground underneath the Explorer and was going to be crushed. From his position at the rear of the police car, Amato could see that the two vehicles were very close to each other, and he could not see Borrico. Amato's belief that Borrico had been knocked to the ground and was now under the Explorer was reasonable, and the time constraints of the fast-developing situation, with the Explorer already in motion and backing up, were such that taking the time to verify that Borrico was under the car, as Plaintiff suggests he should have, would have precluded his taking action to attempt to prevent his partner from being run over. After yelling without success for the driver to stop, Amato shot at the driver of the Explorer to attempt to stop him from backing over Borrico with the vehicle. Given Amato's reasonable belief that Borrico was under the vehicle, it was not inappropriate for Amato to take action to try to protect Borrico from injury or death.

Borrico, hearing Amato's gunshots and mistakenly believing that they were coming from the Explorer, also fired shots at the driver of the Explorer. Borrico's firing shots was reasonable in light of all the circumstances and in light of his knowledge at the time, and did not constitute excessive use of force. As noted above, in determining whether the force used was reasonable, one must consider "the facts and circumstances of each particular case, including the severity of

10

the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.  Here, the crime at issue, an armed assault and attempted robbery, was serious, and the perpetrator had fled from the scene.  The officers saw a vehicle which matched the description put out over police radio and which was traveling away from the location of the assault.  When the officers attempted to pull the vehicle over after observing it driving erratically, they were able to verify that the driver matched the description of the suspect.  However, he again fled, leading the police on a lengthy high speed chase and eventually crashing into a parked car.  As Plaintiff concedes, Mr. Marrow's behavior in engaging the police in a high speed pursuit and violating numerous traffic laws "had generally done little to lessen the suspicions of the officers" that he was indeed the suspect who had committed the assault and that he was armed. (Opp. at 6)  The officers also noticed the driver repeatedly leaning over toward the passenger seat as if reaching for a weapon, and they put out a call on the police radio indicating their suspicion that he was armed.  There is no contention that the officers had the wrong man or that he was not in fact armed.

      After the crash, the suspect again attempted to flee, and in the process of backing up, struck Borrico with enough force to rip his clothing, pin him between the police car and the Explorer, and knock him to the ground.  It is not clear whether the suspect intended to use his vehicle as a weapon and attempted to run over Borrico, or whether this was merely an inadvertent by-product of his illicit flight, but in either case the result was the same, namely that

he struck Borrico.[1]  Given that Borrico reasonably and correctly believed that the driver had committed a serious crime, was armed, had fled from police and was continuing to flee, and had just hit Borrico with a vehicle, it was reasonable for Borrico to believe that the shots he heard coming from the direction of the Explorer were being fired by the vehicle's driver, and to fire back in defense of himself and Amato, whose shot, not Borrico's, caused the death.

Considering the totality of the circumstances, and in light of the fast-evolving nature of the incident, Defendants acted reasonably and their use of force was not excessive, and the evidence is not such that a reasonable jury could find otherwise.  Had the Court held otherwise, it would nonetheless have found Defendants entitled to qualified immunity.  Accordingly, summary judgment is granted to Defendants Amato and Borrico on Plaintiff's excessive force claim.

**B.     Abandoned Claim**

Plaintiff's Complaint makes passing reference to a claim arising under the common law of the State of Connecticut (Compl. ¶1 ), stating that "There was neither justification nor excuse at law for shooting Mr. Marrow in the back, and the officers' conduct in so doing was both reckless and intentional.  The shooting was also a result of negligence as it relates to the common law count of assault."  (Compl. ¶ 15)  Defendants seek summary judgment with respect to the this claim, quoting a case which held that "When a plaintiff asserts excessive force and assault claims which are premised upon a defendant's allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie."  Sylvester v. City of New York, 385 F. Supp. 2d.

---

[1] Plaintiff denied every Rule 56(a) Statement in which Defendants use the word "struck," contending that Borrico maintained only that he was "pinned" between the vehicles, not that he was struck.  This is an inaccurate reading of the deposition, as Borrico specifically said that he was struck (Borrico Dep. at 24) and the contention that he was struck by the Explorer is not in any way inconsistent with his report that he was also pinned for a time between the vehicles.

431, 439 (S.D.N.Y. 2005). In the Opposition to the Motion for Summary Judgment, Plaintiff fails to provide any response to this argument, or to address this claim in any manner.

Therefore, this claim is deemed abandoned, and summary judgment is granted to Defendants. See Santiago v. Newburgh Enlarged City School Dist., 485 F. Supp. 2d 327, 338 (S.D.N.Y. 2007) (dismissing plaintiff's claim that she was fired in retaliation for complaining about discrimination because she failed to respond to the defendant's summary judgment argument); Coger v. Connecticut, 309 F. Supp. 2d 274, 280 (D. Conn. 2004) (noting that the court can consider a §1981 claim abandoned merely because the plaintiff failed to respond to the defendant's argument that summary should be granted in his favor); Taylor v. City of New York, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal Courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way"); Douglas v. Victor Capital Group, 21 F. Supp. 2d 379, 393 (S.D.N.Y. 1998) (holding where the defendant's summary judgment motion addresses specific claims, and the plaintiff's opposition papers do not oppose such arguments, court may deem the claims abandoned and grant summary judgment).

## IV.   CONCLUSION

For the reasons stated herein, Defendants' Motion for Summary Judgment as to all claims [Doc. No. 23] is **granted.** The Clerk shall close the case.

SO ORDERED.

Dated at New Haven, Connecticut, this 12th day of February, 2009.

/s/
Peter C. Dorsey, U.S. District Judge